Judge STUCKY
delivered the opinion of the Court.
We granted review to consider whether trial counsel’s conduct constituted prosecuto-rial misconduct, and if so, whether Appellant’s substantial right to a fair trial was materially prejudiced. We hold that significant prosecutorial misconduct occurred, but that the error was ultimately not prejudicial. We therefore affirm the judgment of the United States Navy-Marine Corps Court of Criminal Appeals.
I. Posture of the Case
Contrary to his pleas, Appellant was convicted by a panel of members sitting as a special court-martial of one specification each of using “spice,” signing a false official statement, and larceny of military property, in violation of Articles 92,107, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 921 (2012). He was acquitted of five other specifications including wrongfully using Xanax, larceny, solicitation, using provoking speech, and communicating threats, in violation of Articles 92, 121, and 132, UCMJ, 10 U.S.C. §§ 892, 921, 932 (2012). The convening authority approved the adjudged sentence of a bad-conduct discharge and three months of confinement, and the United States Navy-Marine Corps Court of Criminal Appeals affirmed. United States v. Hornback, No. NMCCA 201200241, 2013 CCA LEXIS 114, at *13, 2012 WL 7165301, at *5 (N.-M.Ct.Crim.App. Feb. 21, 2013).
II. Background
During the Government’s case-in-chief, trial counsel called eleven witnesses. The first witness, Lance Corporal (LCpl) Powers, testified that Appellant asked her if she smoked spice, showed her a container of what he said was spice, and proceeded to smoke the substance that he said was spice from a pipe. The second witness, Karen Carney, testified that Appellant showed her a jar of what looked like marijuana, but Appellant said was spice. She testified that Appellant told her that spice “[g]ets you high like marijuana,” but “[djoesn’t show up on a drug test.” She further testified that she “smoked a hit” of the substance Appellant identified as spice, and watched Appellant smoke the rest of it. She also testified as to a second occasion that she saw Appellant smoke a pipe loaded with the substance he identified as spice.
No objectionable testimony was elicited from these first two witnesses. The rest of the witnesses, however, proved quite problematic for trial counsel. Trial counsel first questioned LCpl Teets regarding Appellant’s knowledge of the effects of spice and asked whether Appellant ever asked LCpl Teets to use drugs. Although defense counsel objected on the bases of speculation and improper lay opinion, the military judge called an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session and questioned trial counsel about the admissibility of the testimony under Military Rule of Evidence (M.R.E.) 404(b). The military *157 judge asked, “was that uncharged misconduct, 404(b), with reference to the spice[?] I mean, what was the purpose of asking that witness about all that first background? He didn’t smoke spice with this witness, did he?” Defense counsel did not object on M.R.E. 404(b) grounds, however, and the military judge overruled the stated objection. Later during LCpl Teets’s testimony, the military judge called a second Article 39(a), UCMJ, session, during which he cautioned trial counsel to “make sure you are staying away from” character evidence.
The next witness was Gunner’s Mate Third Class (GMB) Robidart, a friend of Appellant’s wife. Trial counsel asked whether Appellant’s wife ever spoke about their marriage to her or told GM3 Robidart anything about why she and Appellant were separated, apparently in an attempt to elicit testimony that Appellant was using drugs. Defense counsel objected on the grounds of relevance and improper character evidence. The military judge called another Article 39(a), UCMJ, session. The military judge explained that “[y]ou can’t just put out there that he used drugs at some point. You have to factor it in to the period charged, right?” The objection was sustained and the members returned.
Trial counsel continued to question GM3 Robidart, this time asking, “did [Appellant] say anything that might make you believe he was speaking from personal experience with drugs?” The military judge sua sponte called another Article 39(a), UCMJ, session, discussing the problem with trial counsel:
MJ: I am concerned that you are getting into what would be 404(b) evidence or other acts evidence. We’ve got to narrow this down. I don’t know what time period we’re talking about. That fact that he used drugs before, you know, if he was having conversations about using drugs outside the charged time period I don’t want that going to the members. I mean you can make an objection about that.
I don’t want to hear any testimony about drug use — the accused admitting to drug use — unless it is the accused admitted to drag use during the charged period. Okay?
TC: Yes, sir.
MJ: All right. So first orient to the charged period. I don’t want there to be the possibility that there was drug use before or after the charged period being admitted into evidence. That would be inadmissible. All right?
TC: Yes, sir.
DC: And, Your Honor, I would also ask that it be to the substances charged. I believe there may be an allegation of ecstasy.
MJ: Exactly. And, yeah, I don’t want just drag use, coke, cocaine, ecstasy, heroin, marijuana. I want the drug. I want it specified to the drug and during the time period if he has made an admission to that....
The military judge then provided trial counsel the opportunity to question GM3 Robi-dart outside the presence of members. Trial counsel took the opportunity, and following the questioning, defense counsel objected on the bases of hearsay and speculation. The military judge sustained the objection and reviewed the limits of hearsay with trial counsel.[1] Trial counsel responded that she was trying to elicit circumstantial evidence that the accused was someone who may have used drags, based on his familiarity with drags. The military judge responded once again that that would be impermissible character evidence, stating, “I mean if someone is charged with using marijuana, you can’t come in here and start eliciting testimony or evidence that, you know, he’s been around marijuana or he knows things about marijuana. I mean its impermissible character or other acts evidence.”
The members returned, and after one proper question, trial counsel asked GM3 Robidart, “[w]hat was his personality like?” Defense counsel objected, and the military *158 judge again sent the members back out. This time, the military judge went so far as to specifically tell trial counsel what questions she could ask.[2] The members reentered the courtroom, and after one transcribed page of questioning, trial counsel again ventured into improper character evidence. The military judge sua sponte interrupted, stating, “Okay. Stop this. Disregard all that testimony. Strike that from your memory as though you’ve never heard it. Can all members follow that instruction?” The members responded affirmatively.
Trial counsel went on to ask GM3 Robidart about Appellant’s use of “any prescription drags,” and GM3 Robidart testified that Appellant said he would “overtake what he was supposed to be taking- [t]o get high.” The military judge sustained defense counsel’s objection on M.R.E. 404(b) grounds and instructed the members to disregard the testimony. Trial counsel continued to ask about unidentified prescription drugs, defense counsel objected, and the military judge called another Article 39(a), UCMJ, session. After discussing what trial counsel was trying to elicit, the military judge explained, “[tjhat is clearly impermissible evidence. You can’t say that he used drags — this drag to get high. He misused this prescription drag on this occasion in order to get high to prove that he therefore used drags and other prescription drugs on a separate occasion to get high.” The military judge explained why he was striking the testimony:
My concern here is that you are getting into all these potential bad acts that aren’t specific to the charged offenses which would blow this ease up. I mean you just can’t have that.
You need direct evidence that a crime was committed. You can’t put all this evidence out there that, yeah, this guy is kind of into drugs and he likes to — he knows a lot about drugs and he knows a lot about drags that can’t be detected in your system. I mean you have to show evidence that he committed the specific crime on the specific date that you alleged he committed the specific crime. Not that he’s a bad guy.
The next Government witness was Lieutenant Commander (LCDR) Terrien, Appellant’s doctor. Trial counsel asked about Appellant’s prescription for Seroquel, and LCDR Terrien explained that it is a medication for schizophrenia and bipolar conditions. Defense counsel objected, the military judge sustained and instructed the members to disregard the answer. After a few more questions, the military judge sua sponte called an Article 39(a), UCMJ, session. The military judge explained that he was “concerned that the jury’s been tainted by hearing evidence that [Appellant] was taking schizophrenia medication.” The military judge chided defense counsel for failing to object on privilege grounds, and explained that he would give an instruction after cross-examination.
The testimony of the next two Government witnesses, LCpl Carillo and Gunnery Sergeant (GySgt) French, was also the subject of sustained objections on M.R.E. 404(b) grounds. Each time, the military judge instructed the members to disregard the testimony.
Next, trial counsel called Corporal (Cpl) Morris, Appellant’s roommate. After one sustained objection to improper character evidence, trial counsel continued to elicit improper testimony and the military judge called another Article 39(a), UCMJ, session. Again, the military judge explained, “[w]hat you can’t do is get into a bunch of evidence that the accused is a druggy and, therefore, he probably used some drag at some point. That’s not admissible evidence.” The military judge then instructed trial counsel to *159 practice her examination of Cpl Morris outside of the presence of members, explaining:
MJ: I’m tired of having the members being exposed to basically character evidence that’s not admissible. I mean you can’t — I just want to reiterate to you, you can’t present evidence that the accused is a druggy; therefore, he probably used drugs. You need to present evidence that he specifically used drugs on a certain day and time.
TC: Yes, sir.
MJ: And a specific drug. Not that he’s just a drug abuser generally and so you should convict him of using drugs. You can’t do that.
TC: Yes, sir.
MJ: You could do that at an ad board. You can’t do that in federal court.
After the members returned, trial counsel’s examination of Cpl Morris drew one additional sustained M.R.E. 404(b) objection.
The Government called three more witnesses during its ease-in-chief. During the examination of LCpl Kelly, objections to improper M.R.E. 404(b) evidence and hearsay were sustained, and during the examination of Chief Warrant Officer 3 (CW03) Easton, a hearsay objection was sustained.
Trial counsel also struggled to avoid statements that the military judge ruled to be improper character evidence during her closing argument. She argued that “[t]he accused is like a criminal infection that is a plague to the Marine Corps.” Defense counsel objected on M.R.E. 404(b) grounds, and the military judge sustained the objection. Shortly thereafter, trial counsel again argued, “[h]e became that criminal infection.” Defense counsel objected and the military judge sustained the objection. Trial counsel then went on to argue, “And the command has taken form — has taken action in the form of these charges before you. The government is confident that you will find him guilty beyond a reasonable doubt.” The military judge immediately interrupted, stating:
Hang on a second.
Okay. Members, a couple things.
One, with respect to that last question, you all agree the convening authority is not expecting a certain result in this case, that you’re to try the case or decide the issues based on the evidence presented before you, and no one is presuming any certain outcome in this case.
Additionally, throughout the course of this trial and even during closing argument, I sustained several objections to character evidence.
You may not consider any evidence that was the subject of a sustained objection for any purpose, and you may not consider— those objections related to character evidence, you may not conclude based on any of that evidence that the accused is a bad person or has general criminal tendencies and that he, therefore, committed the offenses charged. You need to base your determination on the admitted evidence in this case and determine if the offenses were committed beyond a reasonable doubt at the specific times and in the specific manners in which they were alleged.
The military judge asked if all members could follow that instruction, and the panel responded affirmatively.
III. Law
Where proper objection is entered at trial, this Court reviews alleged prosecutorial misconduct for prejudicial error. United States v. Fletcher, 62 M.J. 175, 179 (C.A.A.F.2005) (citing Article 59, UCMJ, 10 U.S.C. § 859 (2000)). Most of the alleged misconduct in this case was either objected to at trial, or the subject of a sua sponte interruption by the military judge.[3]
Prosecutorial misconduct occurs when trial counsel “‘overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.’ ” Id. *160 at 178 (quoting Berger v. United States, 295 U.S. 78, 84, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). “Prosecutorial misconduct can be generally defined as action or inaction by a pi’osecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon.” United States v. Meek, 44 M.J. 1, 5 (C.A.A.F.1996) (citing Berger, 295 U.S. at 88, 55 S.Ct. 629).
The presence of prosecutorial misconduct does not necessarily mandate dismissal of charges or a rehearing. “It is not the number of legal norms violated but the impact of those violations on the trial which determines the appropriate remedy for pros-ecutorial misconduct.” Id. at 6. In determining whether prejudice resulted from prosecu-torial misconduct, this Court will “look at the cumulative impact of any prosecutorial misconduct on the accused’s substantial rights and the fairness and integrity of his trial.” Fletcher, 62 M.J. at 184 (quoting Meek, 44 M.J. at 5). This Court has identified “the best approach” to the prejudice inquiry as requiring the balancing of three factors: “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.” Id. “In other words, prosecuto-rial misconduct by a trial counsel will require reversal when the trial counsel’s comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.” Id.
IV. Discussion
A. Did prosecutorial misconduct occur?
Trial counsel repeatedly and persistently elicited improper testimony, despite repeated sustained objections as well as admonition and instruction from the military judge. Other courts of appeals have held that repeated violations of rules of evidence can constitute prosecutorial misconduct. See, e.g., United States v. Crutchfield, 26 F.3d 1098, 1103 (11th Cir.1994) (finding pros-ecutorial misconduct in repeated violation of Federal Rules of Evidence 404, 608, and 609, where such violations “continued even after the court instructed the prosecutor as to their impropriety”); Beck v. United States, 33 F.2d 107, 114 (8th Cir.1929) (finding pros-ecutorial misconduct where the prosecutor continued to ask improper questions after sustained objections, reasoning, “there is no excuse for offending twice, after the court has ruled upon the matter”). We find that trial counsel’s repeated and persistent violation of the Rules for Courts-Martial and Military Rules of Evidence constitutes prose-cutorial misconduct in this case. See Meek, 44 M.J. at 5 (defining prosecutorial misconduct as “violation of some legal norm or standard, e.g., a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon”); Rule for Court-Martial (R.C.M.) 502(d)(5) Discussion (trial counsel should be prepared to “make a prompt, full, and orderly presentation of the evidence at trial,” and consider the Military Rules of Evidence). It matters not that trial counsel seems to have been merely inexperienced, ill prepared, and unsupervised in this case. Athough one may wonder what her supervisors were doing during the course of Appellant’s trial, the prosecutorial misconduct inquiry is an objective one, requiring no showing of malicious intent on behalf of the prosecutor, and we find none here.
B. Did Appellant suffer prejudice?
To determine whether Appellant suffered prejudice to a substantial right from the misconduct, this Court considers the Fletcher factors: “(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.” 62 M.J. at 184.
The prosecutorial misconduct in this case was sustained and severe. Trial counsel attempted to elicit improper testimony from nearly every witness called during the Government’s ease-in-chief, and made arguably improper argument during her closing argument. She repeatedly appeared unable to either understand or abide by the military judge’s rulings and instruction during the two-and-a-half day trial on the merits. As a result of this pervasive impropriety, we find *161 that the first Fletcher factor weighs in Appellant’s favor.
When we consider curative measures, however, the military judge appears to have left no stone unturned in ensuring that the members considered only admissible evidence in this case. He called multiple Article 39(a), UCMJ, sessions to prevent tainting the panel. He issued repeated curative instructions to the members, each time eliciting that they understood and would follow his instructions. He also issued a comprehensive instruction during trial counsel’s closing argument, again explaining that the members could not consider evidence that was the subject of a sustained objection for any purpose. The military judge acted early and often to ameliorate tidal counsel’s misconduct. Compare United States v. Thompkins, 58 M.J. 43, 47 (C.A.A.F.2003) (holding that “[t]he ameliorative actions of the military judge ... secured the fairness and impartiality of the trial” where the military judge engaged in timely remedial actions including curative instructions to members), with Fletcher, 62 M.J. at 185 (finding the military judge’s curative efforts to be “minimal and insufficient” where he gave only a generic limiting instruction, chastised trial counsel on a single occasion, and failed to sua sponte interrupt trial counsel). Here, the military judge acted effectively to secure the fairness of Appellant’s trial by protecting the panel from potentially improper evidence and issuing curative instructions when appropriate. This factor weighs heavily in the Government’s favor.
Turning to the third Fletcher factor, Appellant stands convicted of signing a false official statement, larceny, and using spice. The false official statement conviction arose from signing a false record stating that he was not married to a military member, when in fact he was. The larceny conviction is based on the amount of Basie Allowance for Housing (BAH) he was overpaid as a result of the false statement. The evidence of these two convictions was strong. Trial counsel presented documentary evidence of the false record with Appellant’s signature, as well as testimony by the officer in charge of service records at Appellant’s base, CW03 Easton, who explained the workings of the dependency forms. As for the larceny, trial counsel submitted BAH documents showing the amount Appellant was paid by the Government while receiving BAH at the with-dependents rate, plus additional testimony by CW03 Easton explaining the process. Moreover, the improper character evidence that trial counsel sought to elicit in this case related to the drug offenses; it did not implicate the larceny or false official statement offenses. For these specifications, the strength of the evidence weighs heavily in the Government’s favor.
The evidence supporting the spice conviction was not as strong as that supporting the larceny and false official statement convictions, but it was substantial. As Appellant points out, there was no drug test, and the military judge commented on the weakness of some of the evidence trial counsel attempt ed to submit. Nonetheless, the first two witnesses established that they saw Appellant smoking a substance that he identified to them as spice. Furthermore, the military judge instructed the panel to disregard the improper testimony elicited by trial counsel, and “[ajbsent evidence to the contrary, court members are presumed to comply with the military judge’s instructions.” Thompkins, 58 M.J. at 47. There is no evidence here that the members failed to comply with the military judge’s instructions in convicting Appellant of the spice offense. To the contrary, and despite the clumsy attempts by the trial counsel to elicit improper character evidence related to drug use generally, the fact that the panel acquitted Appellant of other, weaker drug charges indicates that it took the military judge’s instructions to disregard impermissible character evidence seriously.
Balancing these factors, we are confident that the members convicted Appellant on the basis of the evidence alone. The Appellant was not prejudiced by trial counsel’s misconduct in this ease. Accordingly, the judgment of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

. The MJ explained:
[A]ny statement his wife made to her is hearsay. It is not admissible. Any statements [LCpl Teets] made to her is hearsay regarding the accused [sic] drug use. That is not admissible.

. The MJ explained:
Here is how this should go. How often did you see the accused? Did you interact with him on a daily basis? Were you able to observe the way he acted at work? You don’t have to get into the specifics. How well do you know him? How long did he work for you, et[]cetera, et[]cetera. Okay. Without her talking about the specifics. Okay. And then presumably, you have some questions about the change in that. Is that right?

. Appellant argues that additional instances of misconduct occurred during trial counsel’s opening statement and closing argument, but were not objected to at trial. We conclude that Appellant has not shown that these instances constitute plain error.