*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Brian G. SHORT, Sergeant
United States Army, Appellant

### No. 17-0187
Crim. App. No. 20150320

Argued October 24, 2017 —Decided January 5, 2018

Military Judge: John T. Rothwell

For Appellant: *Captain Zachary A. Szilagyi* (argued); *Colonel Mary J. Bradley, Lieutenant Colonel Christopher D. Carrier, Captain Ryan T. Yoder, and Captain Bryan A. Osterhage* (on brief); *Lieutenant Colonel Melissa R. Covolesky and Major Julie L. Borchers.*

For Appellee: *Captain Kendra J. Holtmann Harris* (argued); *Colonel Mark H. Sydenham, Lieutenant Colonel A. G. Courie III*, and *Major Melissa Dasgupta Smith* (on brief); *Major Virginia H. Tinsley.*

Chief Judge STUCKY delivered the opinion of the Court, in which Judge RYAN, and Senior Judge ERDMANN, joined. Judge OHLSON filed a separate dissenting opinion, in which Judge SPARKS joined.

———————

Chief Judge STUCKY delivered the opinion of the Court.

We granted review to consider whether the trial counsel committed prosecutorial misconduct for improper argument after eliciting inadmissible testimony. However, the military judge properly sustained defense objections and took significant remedial action. Therefore, the proper focus of our review is on whether the military judge abused his discretion by failing to grant Appellant's three motions for a mistrial. We conclude that he did not. We therefore affirm the judgment of the United States Army Court of Criminal Appeals (CCA).

## I. Procedural History

Appellant faced a number of domestic violence charges. A general court-martial comprised of members acquitted him of the most serious charges—forcible sodomy and aggravated assault (Articles 125 and 128, Uniform Code of Military Justice, UCMJ, 10 U.S.C. §§ 925, 928 (2012))—but convicted him, contrary to his pleas, of three specifications of assault consummated by a battery and one specification of simple assault in violation of Article 128, UCMJ. Consistent with Appellant's explicit request, the panel sentenced him to a bad-conduct discharge. The convening authority approved the adjudged sentence, and the CCA affirmed the findings and sentence on appeal. *United States v. Short*, No. ARMY 20150320, 2016 CCA LEXIS 670, at *9, 2016 WL 6875884, at *3 (A. Ct. Crim. App. Nov. 17, 2016) (unpublished).

## II. Background

Appellant and NS were joined in a turbulent marriage, rife with fighting and plagued by accusations of domestic violence. At trial, NS testified that Appellant forced her to perform oral sex, threw a shampoo bottle at her, pulled and dragged her by her hair, shoved her head into the hood of a car, struck her legs, and struck her in the head and face.

In an effort to show that these charged offenses did not happen in isolation, but rather contributed to a pattern of abuse that lasted for years, the Government sought to introduce evidence of prior incidents of verbal and physical abuse, and of Appellant's exercise of financial control over NS, under Military Rule of Evidence (M.R.E.) 404(b). The military judge granted the Government's M.R.E. 404(b) motion in part and denied it in part, making specific rulings as to what uncharged misconduct would be admissible and what would be excluded. Evidence objected to at trial and excluded pursuant to the military judge's M.R.E. 404(b) ruling included statements by NS concerning the general state of her marriage and Appellant's actions immediately following the charged offenses of forcible sodomy, the dragging of NS by her hair, and the striking of NS on her legs.

During the merits phase of the trial, Appellant lodged numerous objections to the questions posed by the trial counsel, including multiple objections on M.R.E. 404(b)

grounds alone. To combat the improper testimony, the military judge took strong and repeated corrective action, employing varied measures to clarify and enforce his M.R.E. 404(b) ruling. For example, after the third sustained objection on M.R.E. 404(b) grounds, the military judge sua sponte called an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), session to order, where he cautioned the Government against eliciting testimony that ran contrary to the court's M.R.E. 404(b) ruling. He later held three additional Article 39(a), UCMJ, sessions at the request of defense counsel, personally cautioned NS against straying into impermissible ground, and rebuked trial counsel with a "last warning."

Most importantly, the military judge also issued several curative instructions which addressed the majority of Appellant's sustained objections regarding M.R.E. 404(b). At one point, he even allowed Appellant to propose appropriate language for a curative instruction and based his instruction on that language.

On more than one occasion, the military judge asked if the members would abide by his curative instructions, and the panel responded affirmatively through nonverbal cues such as nods and raised hands. During one Article 39(a), UCMJ, session, the military judge acknowledged that he received "nods up and down from everyone" showing they understood his curative instruction. Not content with the military judge's remedial measures, however, defense counsel moved for a mistrial on three separate occasions. The military judge denied each of these motions.

Although not objected to at trial, trial counsel also advanced certain arguments Appellant now deems prejudicial. For example, when discussing NS's credibility and demeanor on the stand, trial counsel noted that Appellant "stared at her for the entire afternoon while she gave that testimony." Trial counsel further commented on NS's difficulties in recounting her ordeal, at one point asking the panel to "[i]magine how uncomfortable and how terrifying it was to sit on that stand" and later imploring members to imagine how difficult it was for her to testify.

After the court was closed for deliberations on findings, the defense moved for a finding of not guilty on one of the

assault consummated by a battery specifications, arguing that the Government failed to establish that any items Appellant was alleged to have thrown at the purported victim while she was cowering in the bathtub actually hit her. The military judge ruled that there was no evidence that the alleged victim was struck but there was sufficient evidence for the members to find Appellant guilty of simple assault. Instead of interrupting the court's deliberations and so advising the members, the military judge waited until the members returned with a verdict of guilty. Then, the military judge instructed the members on the lesser included offense of simple assault and had the members return to deliberate on that offense.

### III. The Law

A military judge "may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." Rule for Courts-Martial (R.C.M.) 915(a). The Discussion to R.C.M. 915(a) cautions that "[t]he power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons," including times "when inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of the members."

Accordingly, this Court has held that "a mistrial is an unusual and disfavored remedy. It should be applied only as a last resort to protect the guarantee for a fair trial," *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003), or "where the military judge must intervene to prevent a miscarriage of justice." *United States v. McFadden*, 74 M.J. 87, 89 (C.A.A.F. 2015) (internal quotation marks omitted) (quoting *United States v. Vazquez*, 72 M.J. 13, 19 n.5 (C.A.A.F. 2013)). "Because of the extraordinary nature of a mistrial, military judges should explore the option of taking other remedial action, such as giving curative instructions." *United States v. Ashby*, 68 M.J. 108, 122 (C.A.A.F. 2009).

Absent clear evidence of an abuse of discretion, this Court will not reverse a military judge's determination on a motion for mistrial. *McFadden*, 74 M.J. at 90. "In determin-

ing whether the military judge abused his discretion by not granting a mistrial, we look to the actual grounds litigated at trial." *Id.* The challenge is to assess "the probable impact of the inadmissible evidence upon the court members." *Diaz*, 59 M.J. at 91 (internal quotation marks omitted) (citation omitted). That "judgment is rooted in a simple 'tolerable' risk assessment that the members would be able to put aside the inadmissible evidence." *Id.* (citation omitted).

## IV. Discussion

By Appellant's count, the Government elicited forbidden testimony in violation of the military judge's rulings, the Military Rules of Evidence, and the Rules for Courts-Martial approximately forty times during the trial. Of those violations, several ran afoul of the military judge's M.R.E. 404(b) ruling. In addition to trial counsel's blatant disregard for the military judge's M.R.E. 404(b) ruling, Appellant also contends that trial counsel engaged in improper argument by: (1) inviting the panel to draw negative inferences by commenting on Appellant's behavior and presence during trial; and (2) advancing "Golden Rule" arguments that asked the members to place themselves in the shoes of the victim. While we acknowledge that trial counsel's conduct left much to be desired, Appellant simply cannot show that, in light of the military judge's curative instructions, the members would not be able to put aside the inadmissible evidence. Appellant also cannot show that he was prejudiced by trial counsel's arguments.

Here, Appellant argues that the case against him was not strong, pointing to the fact that the Government proffered no corroborating eyewitness testimony or physical evidence. While it is true that this case relied largely on unsupported testimonial evidence, the mixed findings, including several acquittals and convictions based on lesser included offenses, indicate the court members were capable of and did put aside the inadmissible evidence, and Appellant suffered no prejudice. *See United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017) ("[t]he panel's mixed findings further reassure us that the members weighed the evidence at trial and independently assessed Appellant's guilt without regard to trial counsel's arguments"); *United States v. Hornback*, 73 M.J. 155, 161 (C.A.A.F. 2014) ("the fact that

the panel acquitted Appellant of other, weaker drug charges indicates that it took the military judge's instructions to disregard impermissible character evidence seriously"). Ultimately, Appellant was convicted on only four out of eight specifications, indicating "the members were able to weigh the evidence offered at trial and make an independent assessment of Appellant's guilt or innocence with regard to each separate specification." *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017). Contrary to Appellant's claim that the evidence was weak and there was no logic to the panel's findings, the record indicates the panel engaged in a careful, deliberative process based on the evidence alone.

"We presume, absent contrary indications, that the panel followed the military judge's instructions" with regard to the improper testimony and trial counsel's arguments.[1] *Sewell*, 76 M.J. at 19. Trial counsel's conduct was not so prejudicial that the curative instructions were inadequate, and there is simply "no evidence here that the members failed to comply with the military judge's [curative] instructions" when convicting Appellant. *Hornback*, 73 M.J. at 161.

We disagree with any suggestion that the military judge's finding of not guilty regarding the assault consummated by a battery via the shampoo bottle vitiates our conclusion that the court members were able to follow the military judge's curative instructions and set aside the inadmissible evidence. The military judge's instructions explicitly allowed members to draw reasonable inferences from the evidence and testimony presented. NS testified that Appellant threw items at her at close range while she crouched in the shower, covering her head in an attempt to protect herself. From this testimony, panel members could reasonably have inferred that Appellant committed an assault consummated by a battery. While the military judge himself in-

---

[1] While the military judge did not issue a limiting instruction sua sponte with regard to the allegedly improper arguments in closing, he did give a generic instruction reminding the members that "the arguments of counsel are not evidence …. [Members] must base the determination of the issues in the case on the evidence as [they] remember it and apply the law as [the military judge] instruct[ed them]."

terpreted the evidence otherwise, there is no evidence that the panel failed to understand and follow his instructions.

With regard to the allegedly improper arguments Appellant now challenges, we note that the perceived errors were so slight that both defense counsel and the military judge failed to recognize them, indicating that neither saw the need for remedial measures at all.

Furthermore, we note that the panel imposed a very lenient sentence. The panel sentenced Appellant, consistent with his explicit request, to a bad-conduct discharge and adjudged no other punishment. Considering his maximum possible sentence for the offenses of which he was charged included a dishonorable discharge, confinement for life without eligibility for parole, and forfeitures of all pay and allowances, *Manual for Courts-Martial, United States* pt. IV, ¶ 51.e.(1) (2012 ed.) (*MCM*), it is difficult for us to say that Appellant suffered prejudice when he was only convicted of four assaults and his sole punishment consisted of his requested outcome—a bad-conduct discharge.

In the absence of any prejudice, we cannot say that the military judge abused his discretion in declining to declare a mistrial. On the contrary, the military judge took action early and often to combat perceived abuses and minimize any potential prejudice. Given the measures undertaken by the military judge, we conclude that he did all that was necessary to "protect the guarantee of a fair trial." *Diaz*, 59 M.J. at 90.

In light of this Court's longstanding view of mistrials as an "extraordinary" remedy and the directive that military judges explore other remedial action first, *Ashby*, 68 M.J. at 122, we conclude that the military judge was not required to declare a mistrial here. This is not a case where "inadmissible matters so prejudicial that a curative instruction would be inadequate are brought to the attention of members." R.C.M. 915(a) Discussion. Instead, the danger of unfair prejudice from improper testimony and trial counsel's arguments was slight, as borne out by the mixed findings and lenient sentence. As there is no "clear evidence of an abuse of discretion" in denying Appellant's motions for a mistrial or failing to sua sponte declare one, we will not disturb the

military judge's decision. *McFadden*, 74 M.J. at 90 (internal quotation marks omitted) (citation omitted).

**V. Judgment**

The judgment of the United States Army Court of Criminal Appeals is affirmed.

Judge OHLSON, with whom Judge SPARKS joins, dissenting.

To put this case into its proper perspective, a number of points need to be highlighted.

First, during the Government's direct and redirect examination of the victim in this case:

- the military judge felt compelled to sustain objections by the defense—or the two trial counsel felt compelled to withdraw their questions—*twenty-three* times;

- the military judge needed to provide curative instructions to the panel members *six* times;

- trial defense counsel moved for a mistrial *three* times; and,

- throughout the trial, the military judge had to convene Article 39(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 839(a) (2012), sessions *sixteen* times—half of them just to address trial counsel's violation of the military judge's Military Rule of Evidence (M.R.E.) 404(b) ruling.[1]

Second, prior to trial the military judge made a detailed ruling on what uncharged misconduct was admissible and what was inadmissible. And yet, the day before trial, Government counsel provided notice of their intent to admit much of the same evidence that the military judge already had ruled was inadmissible. After noting that four of the five paragraphs violated his earlier M.R.E. 404(b) ruling, the military judge admonished trial counsel to comply with the ruling. Nonetheless, as can be seen below, trial counsel repeatedly failed to do so.

For example, during the court-martial the military judge sua sponte convened an Article 39(a), UCMJ, session after trial counsel asked multiple questions that led to sustained objections. The military judge reminded trial counsel that they were asking questions that were contrary to his earlier

---

[1] One of those Article 39(a), UCMJ, sessions began with an apparently exasperated military judge declaring: "Everybody back in my chambers!"

M.R.E. 404(b) ruling and specifically asked if trial counsel had any questions about the ruling. Trial counsel responded that they did not. And yet a mere seven questions later, trial counsel again asked a question that led to a sustained objection for violating the military judge's M.R.E. 404(b) ruling. An additional three questions later, trial counsel's question led to yet another sustained objection on M.R.E. 404(b) grounds.

Third, the nature of the evidence, which was elicited in violation of the military judge's ruling, is of particular concern.[2] For example, trial counsel elicited testimony that Appellant often watched pornography, broke into a friend's house in search of his wife, hit his wife in the head with a full can of beer, and held his wife down by putting both his hands around her throat.

Testimony about the last incident—where Appellant allegedly put his hands around his wife's throat while holding her down—prompted the military judge to convene one of the sixteen Article 39(a), UCMJ, sessions. After the military judge explained that the Government needed to either charge the incidents or provide M.R.E. 404(b) notice, trial counsel complained that it was "unfair" for the Government to be required to provide notice of "each and every act" of the Appellant.[3] Seemingly unmoved by this complaint, the mili-

---

[2] The improper introduction of character evidence at a court-martial with panel members is of "particularly grave concern." *United States v. Hornback*, 73 M.J. 155, 164 (C.A.A.F. 2014) (Ohlson, J., with whom Baker, C.J., joined, dissenting). "Character evidence is particular anathema to U.S. notions of fair trial, running the risk as it does that members may be swayed to convict not on the basis of evidence, but because the defendant is a bad person deserving of punishment." *Id.* at 162 (Baker, C.J., with whom Ohlson, J., joined, dissenting).

[3] [ATC:] We have to—within each specification we now have to—we were supposed to provide 404(b) notice for everything that happened within a particular assault incident?

….

[ATC:] It seems – it seems a little unfair ….

MJ: Unfair to who[m]?

ATC: Unfair to the government ….

tary judge announced that he would provide one more curative instruction and that this was the "last warning" to the Government. And yet, trial counsel continued to ask questions that elicited testimony which resulted in the military judge sustaining seven more objections on M.R.E. 404(b) grounds.

In citing this conduct by trial counsel, I do not seek to impugn their motives or their ethics. It appears from the record that inexperience rather than guile was the genesis of the repeated problems that arose in this case.[4] But as this Court has noted, "In analyzing allegations of prosecutorial misconduct, courts should gauge the overall effect of counsel's conduct on the trial, and not counsel's personal blameworthiness." *United States v. Rodriguez-Rivera,* 63 M.J. 372, 378 (C.A.A.F. 2006) (citation omitted) (internal quotation marks omitted).

Fourth, the majority states that the proper focus of review is whether the military judge abused his discretion by not granting Appellant's motions for a mistrial rather than the granted issue of whether there was prosecutorial misconduct. However, in my view, when faced with pervasive prosecutorial misconduct as in this case, an appellant should not be penalized by the imposition of a more stringent standard of review simply because the trial defense counsel appropriately made a motion for a mistrial. Rather, the proper standard should be as follows: "[P]rosecutorial misconduct … will require reversal when the trial counsel's [actions], taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on

---

MJ: That is one of the burdens of being the government.

[4] The best cure for errors stemming from inexperience is supervision. As then Chief Judge Charles N. Pede, now the Judge Advocate General of the Army, noted, "[s]upervision of the trial process is elemental to our role as judge advocates …. [C]*hiefs of justice … must engage their subordinate counsel energetically and appropriately throughout the trial process.*" *United States v. Mack*, No. ARMY 20120247, 2013 CCA LEXIS 1016, at *5–6, 2013 WL 6528518, at *2 (A. Ct. Crim. App. Dec. 9, 2013) (Pede, C.J., concurring) (unpublished) (emphasis added).

the basis of the evidence alone." *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005).

In applying this standard to the instant case, I concede that the military judge repeatedly gave limiting instructions to the panel members. However, there is a point at which prosecutorial misconduct is so pervasive that instructions from the bench are insufficient to counter the prejudicial effect to the appellant. In other words, at some juncture multiple "*limiting* instructions" can no longer be considered "*curative* instructions." That point was surpassed in this case. *See United States v. Crutchfield*, 26 F.3d 1098, 1103 (11th Cir. 1994) ("When [prosecutorial misconduct] permeate[s] a trial to such a degree as occurred in this case, we do not believe that instructions from the bench are sufficient to offset the certain prejudicial effect suffered by the accused.").

Moreover, our standard assumption about the effect of instructions on panel members is not without borders. As this Court has stated, "We presume, *absent contrary indications,* that the panel followed the military judge's instructions." *United States v. Sewell*, 76 M.J. 14, 19 (C.A.A.F. 2017) (emphasis added). In the instant case, contrary indicators are clearly present. Specifically, the members found Appellant guilty beyond a reasonable doubt of the assault consummated by a battery offense even though the military judge concluded during the members' deliberation that there was no evidence in the record to support the element of battery.[5] This verdict serves as substantial evidence that the members did not follow the military judge's instructions and that their decision to convict Appellant was based on something other than the admitted evidence.

And finally, the strength of the Government's case was not particularly compelling. The prosecution relied entirely

---

[5] This was not a matter of reasonable minds differing on the weight of the evidence. A military judge must view the evidence in the light most favorable to the prosecution and can grant a Rule for Courts-Martial (R.C.M.) 917 motion "only in the absence of some evidence which, *together with all reasonable inferences and applicable presumptions*, could reasonably tend to establish every essential element" of the charged offense. R.C.M. 917(d) (emphasis added).

on the testimony of the victim and her two friends. There were no prosecution exhibits, no confessions or admissions by Appellant, no physical evidence, and no text messages or other electronic evidence.

Because of the frequency and severity of the prosecutorial misconduct, the insufficiency of the corrective actions, and the minimal weight of the admitted evidence, I cannot be confident that the members convicted Appellant based on the evidence alone. Therefore, I would find prejudice,[6] reverse the findings and sentence, and authorize a new proceeding.

---

[6] Prejudice exists when an appellant is convicted of even a single offense which is tainted by prosecutorial misconduct. *Cf. Hornback*, 73 M.J. at 160 ("[P]rosecutorial misconduct by a trial counsel will require reversal when the trial counsel's [actions], taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." (internal quotation marks omitted) (citation omitted)). *Any leniency in the punishment imposed for that conviction is irrelevant to the determination of whether that prejudice was manifest.* Even if it were relevant, a bad-conduct discharge is a severe punishment and "should not be viewed lightly simply on account of a minimum amount of forfeitures or confinement awarded in conjunction with it." *United States v. Dukes*, 5 M.J. 71, 74 (C.M.A. 1978); *see also* Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 2, § VI, para. 2-6-10 (2017) ("A bad-conduct discharge is a severe punishment .... Such a discharge deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Army establishment."). A sentence of solely a punitive discharge is not indicative of a lack of prejudice. *Dukes*, 5 M.J. at 74.