*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Justin W. CHISOLM**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202300144**

_____

Decided: 16 December 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Derek A. Poteet

Sentence adjudged 6 September 2022 by a general court-martial tried at Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 40 months, reduction to E-1, forfeiture of all pay and allowances, and a bad-conduct discharge.

For Appellant:
*Captain Arthur Gaston, JAGC, USN*

For Appellee:
*Lieutenant Colonel James A. Burkart, USMC*

Senior Judge KIRKBY delivered the opinion of the Court, in which
Chief Judge HOLIFIELD and Judge de GROOT joined

_____

**This opinion does not serve as binding precedent under
NMCCA Rule of Appellate Procedure 30.2(a).**

_____

KIRKBY, Senior Judge:

A military judge, sitting alone as a general court-martial, convicted Appellant, pursuant to his pleas, of disobeying a lawful order, battery of his spouse, three specifications of child endangerment by design, and drunk driving, in violation of Articles 90, 128, 119b, and 113, of the Uniform Code of Military Justice [UCMJ] respectively.[1]

Appellant asserts two related assignments of error [AOE] which we summarize as follows: (1) Prosecutorial misconduct by trial counsel for threatening to seek sanctions if the Defense filed a certain motion; and (2) unlawful command influence (UCI) by trial counsel for the same threat. We find no prejudicial error and affirm.

## I. BACKGROUND

"In contentious litigation there are contentious conversations between opposing counsel."[2] This truism sums up both the nature of trial litigation and the underlying issue in this case.

In October 2021, Appellant was arrested for domestic violence.[3] Shortly thereafter, Captain (Capt) Delta, USMC, was detailed to represent him as his military defense counsel.[4] In April 2022, Appellant, one of his civilian defense counsel, and the convening authority signed a plea agreement.[5] In July 2022,

_____

[1] 10 U.S.C. §§ 890, 928, 919b, and 913.

[2] R. at 59 (military judge).

[3] R. at 540.

[4] All names other than those of counsel and the military judge are pseudonyms.

[5] App. Ex. XXXVIII.

Capt Delta met with trial counsel, Capt Oscar, USMC, to discuss scheduling Appellant's guilty plea. During the course of that conversation, Capt Oscar "raised his voice and expressed frustration over scheduling conflicts that resulted in the hearing being scheduled on a Saturday."[6] Capt Oscar allegedly stated that he "intended to request that the military judge hold everyone at defense counsel's table in contempt of court for filing a frivolous motion if defense counsel files an Article 13 motion."[7] This statement forms the basis for both of Appellant's AOEs.

On 9 July 2022, Appellant's civilian defense counsel filed a motion for appropriate relief pursuant to Rule for Courts-Martial (R.C.M.) 906 requesting dismissal of all charges and specifications or, in the alternative, 873 days of confinement credit.[8] This motion cited acts and inaction by the Government including lack of command brig visits, failing to assist Appellant file his taxes, the impounding of Appellant's car, and lost and unclean uniforms as a variety of illegal pretrial punishments. Among these numerous claimed violations of Article 13, UCMJ, was the aforementioned interaction between Capt Delta and Capt Oscar that Appellant couched as prosecutorial misconduct and deemed "a continuation of the government's impeding defense access to judicial remedies under Article 13."[9]

On 19 August 2022, Appellant severed his relationship with Capt Delta through the mechanisms of R.C.M. 505(d)(2)(B)(iii), via the Regional Defense Counsel.[10] In his request, Appellant stated in part, "My basis for severance of this relationship is due to the matter of the threat by the government counsel to her regarding my Article 13 pretrial motion and the need for my defense team to call her as a witness on the motion."[11] We note, however, that Capt

---

[6] App. Ex. XXV at 113. The record indicates extensive delays in this case due to conflicting schedules that resulted in the plea being taken on 1 September 2022, more than seven months after Appellant's arraignment.

[7] App. Ex. XXV at 113.

[8] App. Ex. XXIV at 1 (Defense motion for appropriate relief (Article 13 Illegal Pretrial Punishment)). Appellant's calculation of confinement credit represents three days of credit for each day of confinement.

[9] App. Ex. XXIV at 15.

[10] We note, however, that Capt Delta signed the plea agreement on 31 August 2022 in her role as "Military Defense Counsel." *See* App. Ex. XXXVIII.

[11] App. Ex. XXV at 1.

Delta was not listed as a witness in the Defense motion but proffered an affidavit regarding the interaction that occurred between her and Capt Oscar. At a subsequent Article 39(a) session to hear the Defense motion[12] the military judge found, based on Capt Delta's affidavit, with regard to the interaction between Capt Oscar and Capt Delta, "assuming arguendo that [the] defense assertions are completely true and correct and accurate…they did not rise to constitute any wrongdoing by [Capt Oscar]."[13]

And so he did not allow Capt Delta to be called as a witness.[14] The military judge explained to Appellant that his ruling removed Appellant's stated reason for releasing Capt Delta – the need to call her as a witness. Additionally, the military judge determined that Capt Oscar, who had been removed from the case by his chain of command, was not a necessary witness. On the record, the military judge inquired at length about Appellant's desire to release Capt Delta and found "pursuant to Rule for Courts-Martial 506(c) . . . the accused, after being fully informed of and understanding his right to counsel, has freely, expressly and voluntarily requested excusal of Captain [Delta] as his detailed military counsel."[15] The military judge then released Capt Delta and severed the attorney–client relationship between Capt Delta and Appellant. Appellant subsequently pleaded guilty in accordance with the plea agreement and was sentenced within the negotiated range.[16]

---

[12] The military judge subsequently granted relief in the form of sentencing credit for Article 13 violations related to pretrial confinement conditions. Appellant does not challenge the military judge's ruling on those aspects of the Article 13 motion before this Court.

[13] R. at 59.

[14] R. at 63.

[15] R. at 92.

[16] App. Ex. XXXVIII. Terms of the plea agreement permitted Appellant to file an Article 13 motion (Pretrial Confinement Conditions)

## II. DISCUSSION

### A. Trial Counsel's words and tone did not amount to prosecutorial misconduct.

#### 1. Standard of Review and the Law

Prosecutorial misconduct is "action or inaction by a prosecutor in violation of some legal norm or standard, e.g. a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon."[17] This Court reviews allegations of prosecutorial misconduct de novo.[18] When a proper objection is made at trial, the issue is preserved and we review for prejudicial error.[19] We consider Appellant's motion for appropriate relief (Article 13 illegal pretrial punishment), which included the prosecutorial misconduct issue raised here, to have preserved that issue for our review.

#### 2. Analysis

Appellant suggests two routes to his requested relief – setting aside the negotiated-for and adjudged bad-conduct discharge. We will address each.

First, Appellant asserts that Capt Oscar's comments amounted to a professional responsibility violation that violated Article 38(b), UCMJ, which requires granting of relief. Rule 8.4(a)(4) of the Rules of Professional Conduct declare that it is "professional misconduct for a covered attorney to . . . engage in conduct that is prejudicial to the administration of justice." We might agree that this broad language would, if read in isolation, be cause for alarm in this case and many others where contentious issues are discussed, negotiated and fought over by zealous advocates on either side of the aisle. Thankfully, the Judge Advocate General and common sense have given us all guidance. Rule 8.4(b) in part states:

> Although a covered attorney is personally answerable to the entire criminal law, a covered attorney should be professionally answerable only for offenses that indicate lack of those character-

---

[17] *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014) (internal quotation and citation omitted) *cert denied* 574 U.S. 825 (2014).

[18] *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018), *cert. denied*, 586 U.S. 968 (2018).

[19] *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing 10 U.S.C. § 859 (2000)).

istics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category.

Rule 8.4(b) continues to give examples and explanations, none of which can reasonably be read to encompass the facts of this case. We see no indication in the record before us that Rule 8.4 was violated here. After reviewing the prosecutorial misconduct issue de novo, we find this argument without merit.

Next, Appellant argues that the comments by Capt Oscar prevented Capt Delta from adequately representing Appellant. This, Appellant argues, frustrated the established attorney-client relationship in violation of Article 38(b), UCMJ, and prejudiced Appellant by causing him to lose that military defense counsel. We disagree. The stated basis for Appellant to release Capt Delta was "due to the matter of the threat by the government counsel to her regarding my article 13 pretrial motion (sic) and the need for my defense team to call her as a witness on the motion."[20]

 This line of rationale fails to account for five vitally relevant facts:

First, assuming arguendo that the threat to seek a contempt citation was as described by Capt Delta, the same alleged conflict would have flowed equally to the other defense counsel. As the military judge points out, both civilian counsel would have been obliged to withdraw if they felt this created a conflict . . . yet neither did.[21] If the statement by Capt Oscar was of such magnitude as alleged, then it is axiomatic that all similarly situated counsel would have had to withdraw. And yet only Capt Delta was somehow burdened by this alleged conflict of interest.[22]

Second, Appellant erroneously equates the alleged statement of Capt Oscar as equivalent to the threat of sanctions.[23] Captain Delta's declaration facially does not say that; it states that he "intends to request that the military judge

---

[20] App. Ex. XLII.

[21] R. at 60.

[22] We are at a loss to understand how Capt Delta reportedly became aware of a conflict on 7 July, was released by Appellant on 19 or 22 August, and yet signed the plea agreement as military defense counsel on 31 August.

[23] Appellant's Brief at 20.

hold everyone at defense counsel's table in contempt of court for filing a frivolous motion if counsel files an Article 13 motion."[24] This statement is several steps removed from any sanctions. R.C.M. 809 describes among other things the types of contempt contemplated, the procedure for holding contempt proceedings, and the appeals process from such proceedings. Captain Oscar is in no way authorized or empowered to adjudge or enforce sanctions under R.C.M. 809 or any other provision of the Manual for Courts-Martial.

Third, Appellant argues "trial counsel's threat to pursue contempt proceedings . . ." caused a conflict for Capt Delta who was now a material witness.[25] Appellant further argues he took the action (severing the attorney-client relationship with Capt Delta) "due to the matter of the threat by government counsel…and the need to call [Capt Delta] as a witness on the motion."[26] However, the record is clear: the military judge, in ruling that the alleged statement by Capt Oscar did not constitute wrongdoing -- even assuming Appellant's allegation to be "completely true and correct" --  eliminated the need for Capt Delta to testify as a witness, which removed Appellant's asserted need to sever his attorney-client relationship with Capt Delta.[27]

Fourth, the military judge explained at length to Appellant that, not only was Capt Delta not an essential witness to the Article 13 motion, but also that she would not be called as a witness and that the military judge had ruled the statement by Capt Oscar "was not wrongdoing, was not misconduct, [and] did not create a conflict of interest for Captain Delta."[28]

Finally, while Appellant and his counsel put a great deal of stock in labeling Capt Delta as a material witness when arguing the necessity of severing the attorney-client relationship, neither the facts of this case nor the rules of professional conduct required such severance. Rule 3.7 states: (a) "A covered attorney shall not act as advocate at a trial in which the covered attorney is likely to be a necessary witness. . . . ."[29] But Capt Delta submitted an affidavit, which

---

[24] App. Ex. XXV at 113.

[25] Appellant's Brief at 5.

[26] Appellant's Brief at 5.

[27] R. at 63.

[28] R. at 88.

[29] Dep't of the Navy, Judge Advocate General Instr. 5803.1E, Navy Marine Corps Trial Judiciary, Rule 3.7 (Attorney as Witness) (20 Jan 2015) (JAGINST 5803.1E).

was accepted by the trial court, thus making her cumulative testimony unnecessary.[30] Additionally, Rule 3.7 permits an attorney to be a witness where "disqualification of the covered attorney would work substantial hardship on the client."[31] Again, Appellant seeks to have it both ways – suggesting Capt Delta was essential to the Defense case and that her severance was mandated by the comments of Capt Oscar. Appellant's argument that this impacted the "most critical phase of the proceedings" supports the idea that Capt Delta departing at this stage would be a hardship to Appellant.[32] Therefore, under a plain reading of Rule 3.7, Capt Delta was not required to withdraw; and the severance of the attorney-client relationship, without assigning tactical gamesmanship to the Defense, must be attributed to Appellant's freely made decision.

Despite Appellant's assertions of similarities between this case and *United States. v. Gilmet*, the cases are factually and legally distinguishable.[33] The first difference is the relationship between the individuals involved. Here two peers, junior officers (O-3s), who represented opposing parties in on-going litigation, were discussing that case. On the other hand, *Gilmet* involved a senior officer (O-6), "who oversaw the slating and assignment process for all Marine Corps judge advocates."[34] That O-6 was not representing a party in litigation and was not involved in the negotiation of a case.[35] The second difference between these cases is the nature of the "threat." Here, the statement, taking at face value the affidavit of Capt Delta, was to seek action from the military judge. In *Gilmet*, the threat was describing a "pervasive mindset throughout the Marine Corps JAG community that causes defense counsels' careers to stall out because of their service in defense billets "[36] Finally, in *Gilmet* the defense counsel were released based on "their motion to withdraw" *and* when the "[a]ppellant reluctantly consented to the withdrawal."[37] Here, Appellant requested "to

---

[30] In response to the Appellant's motion at the trial court the government conceded the conversation between Capt Oscar and Capt Delta occurred, but disputed the exact language used by Capt Oscar. See App. Ex. XXXVI.

[31] JAGINST 5803.1E, Rule 3.7, Attorney as Witness.

[32] Appellant's Brief at 13.

[33] *United States v. Gilmet*, 83 M.J. 398 (C.A.A.F. 2023).

[34] *Id.* at 400

[35] *Id.*

[36] *Id.* at 405.

[37] *Id.* at 403.

release Captain [Delta] and to continue with who I have now at trial."[38] Civilian defense counsel is clear on the record: Appellant was "firing" Capt Delta.[39]

Having reviewed the record we find the alleged comments by Capt Oscar to Capt Delta, as reported by Capt Delta, while ill advised, did not amount to prosecutorial misconduct. The severance of the attorney-client relationship between Appellant and Capt Delta was unnecessary as Capt Delta was under no conflict of interest. Appellant's release of Capt Delta was a freely made decision not based on any legal or ethical conflict facing Capt Delta. We therefore reject Appellant's first AOE.

## B. Trial Counsel's Comments Did Not Constitute Unlawful Command Influence.

### 1. Standard of Review and the Law.

Appellant asks us, for the 'first time on appeal, to find Capt Oscar's comments to Capt Delta amounted to UCI.[40] We decline to do so.

Article 37, UCMJ, prohibits unlawful command influence by all persons subject to the UCMJ. Unlawful command influence has long been recognized as "the mortal enemy of military justice."[41] Article 37(c) states: "No finding or sentence of a court-martial may be held incorrect on the ground of a violation of this section unless the violation *materially prejudices the substantial rights of the accused.*"[42] We review claims of unlawful influence de novo.[43] To make a prima facie case of unlawful command influence, an accused bears the initial

---

[38] R. at 90.

[39] R. at 55-56.

[40] *United States v. Chamblin*, No. 201500388, 2017 CCA LEXIS 694, *18 (N-M. Ct. Crim. App. Nov. 8, 2017) ("When raising UCI for the first time on appeal, an appellant must show something more than an appearance of evil to justify action by an appellate court in a particular case. Proof of UCI 'in the air' will not do.").

[41] *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986) *cert denied* 479 U.S. 1085 (1987).

[42] 10 U.S.C. § 837(c) (2018 & Supp. I 2019-2020) (emphasis added).

[43] *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018).

burden of presenting "some evidence" that unlawful command influence occurred.[44] "This burden on the defense is low, but the evidence presented must consist of more than 'mere allegation or speculation.'"[45]

Once the accused meets the "some evidence" threshold, the burden shifts to the Government to prove beyond a reasonable doubt that either: (a) the "predicate facts proffered by the appellant do not exist," or (b) "the facts as presented do not constitute unlawful command influence."[46]

### 2. Analysis

As discussed above, the severance of the attorney-client relationship between Appellant and Capt Delta was not mandated by any legal or ethical requirements. It is clear from the record that, despite an extensive colloquy with the military judge and a ruling that Capt Delta would not be allowed to take the stand, Appellant still chose to pursue the severance. That is, having been told that the testimony of Capt Delta, a primary declared reason for the severance, was not going to be permitted, Appellant continued to pursue the severance. Appellant insisted he was firing Capt Delta and that he was doing so voluntarily. During his plea colloquy, Appellant was again asked who he wanted to represent him. He confirmed it was his two civilian defense counsel and his new military lawyer. He further confirmed that he had released Capt Delta and did not want to be represented by her.[47]

While we do not believe the comments made by Capt Oscar amounted to "some evidence" of unlawful command influence, we can easily resolve this matter by assessing prejudice to Appellant. We disagree with Appellant's contention that he faced a "Hobson's choice."[48] The record is clear that the military

---

[44] *United States v. Boyce*, 76 M.J. 242, 249 (C.A.A.F. 2017) (internal quotation marks omitted) (quoting *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)).

[45] *Id.* (quoting *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013)) (citing *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991)).

[46] *Id.* (citing *Salyer*, 72 M.J. at 423; *United States v. Biagase*, 50 M.J. 143, 151 (C.A.A.F. 1999)).

[47] R. at 323-324.

[48] An apparently free choice when there is no real alternative. *See* Merriam-Webster, *Hobson's choice*, https://www.merriam-webster.com/dictionary/Hobson%27s%20choice (last visited Nov. 19, 2024).

judge, after appropriately considering the affidavit by Capt Delta and exercising authorized control over the proceedings, found that the facts did not amount to wrongdoing.[49]

Further, Appellant was made aware of this and given multiple opportunities to retain Capt Delta as his counsel. He declined. Instead, Appellant freely and knowingly "fired" Capt Delta and chose to proceed with the three counsel by his side. Appellant entered into a plea agreement after the military judge had ruled on this matter and made no effort to withdraw from that plea agreement, no effort to seek more time to prepare for sentencing and no effort to suggest that, but for Capt Oscar's comments, the plea agreement would be different without Capt Delta's continued representation. Nor does Appellant now seek to withdraw from his plea agreement.

We find Appellant suffered no prejudice to any substantial right as a result of Capt Oscar's comments. First, as discussed above, the nature of the comment did not constitute a "threat." Second, Capt Oscar apologized and was removed from the case. Third, Appellant's remaining counsel filed and argued the motion and received confinement credit for Article 13 violations the military judge assessed.[50] Fourth, knowing all this, Appellant proceeded with his guilty plea. Finally, the military judge fully established that Appellant's discharge of Capt Delta was knowing and voluntary. We therefore reject Appellant's UCI claim.[51]

---

[49] R.C.M 801(a)(3).

[50] App. Ex. XXIV; *see also* App. Ex. LXVI.

[51] While we believe Article 37, UCMJ, has effectively ended the concept of apparent UCI, we also find that no objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a doubt about the fairness of the proceedings. *See United States v. Gattis*, 81 M.J. 748, 757 (N-M. Ct. Crim. App. 2021).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[52]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK. K JAMISON
Clerk of Court

---

[52] Articles 59 & 66, UCMJ.