*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS

## FOR THE ARMED FORCES

───────────────

**UNITED STATES**
Appellee

**v.**

**Todd D. SEWELL, Sergeant**
United States Army, Appellant

**No. 16-0360**
Crim. App. No. 20130460

Argued October 12, 2016—February 1, 2017

Military Judge: James Varley

For Appellant: *Captain Ryan T. Yoder* (argued); *Lieutenant Colonel Jonathan F. Potter* (on brief); *Major Christopher D. Coleman.*

For Appellee: *Captain Linda Chavez* (argued); *Colonel Mark H. Sydenham* and *Lieutenant Colonel A. G. Courie III* (on brief); *Major Cormac M. Smith.*

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN and Judges STUCKY and SPARKS joined. Judge OHLSON filed a separate opinion, concurring in part and dissenting in part.

───────────────

Judge RYAN delivered the opinion of the Court.

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of six specifications of indecent acts and one specification of assault with intent to commit rape, in violation of Articles 120 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 934 (2006 & 2012). The MJ dismissed Appellant's Article 80, UCMJ, 10 U.S.C. § 880 (2012), charge for attempted rape, and the panel found Appellant not guilty of ten other specifications, including indecent exposure, unlawful touching, impeding an investigation, and communicating threats. The panel sentenced Appellant to one year of confinement, a dishonorable discharge, reduction to E-1, and forfeiture of all pay and allowances. The findings and sentence were approved by the convening authority and affirmed—with a proviso for 30-days' confinement credit—by the Army Court

of Criminal Appeals (ACCA). *United States v. Sewell*, No.
ARMY 20130460, 2016 CCA LEXIS 58 at *3–4, 2016 WL
381340 at *1 (A. Ct. Crim. App. Jan. 29, 2016). We granted
review of the following issue in this case:

> Whether the trial counsel committed prosecutorial miscon-
> duct by making improper argument on the findings.

Some of trial counsel's statements during argument were
improper. However, even assuming clear or obvious error,
*see United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014),
we find no prejudice. The evidence underlying Appellant's
convictions was demonstrably stronger than the evidence
underlying his acquittals, and we are "confident that the
members convicted [him] on the basis of the evidence alone."
*United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005).
Finding no material prejudice to Appellant's substantial
rights, we affirm the CCA. Article 59(a), UCMJ, 10 U.S.C. §
859(a) (2012).

## I. FACTS

### A. The Convictions

Appellant's convictions involved six different individuals.
The panel convicted Appellant of four specifications that
arose from an allegation of sexual assault by PFC MN. Ap-
pellant was a noncommissioned officer in MN's unit at Fort
Hood. Prior to the alleged incident, Appellant had extended
an open offer to MN to sleep in his spare bed in the event
she ever needed to do so. On her first night in the barracks,
MN was uncomfortable staying in her own room because her
roommate was hosting a guest, so she took Appellant up on
his offer. Appellant showed her to his spare bed and MN
eventually fell asleep. MN testified that she awoke to Appel-
lant on top of her, completely naked, kissing her and taking
off her shorts. After pushing Appellant off, MN left Appel-
lant's room and went next door to the room of her close ac-
quaintance, JF. JF testified that MN was hysterical and up-
set when she entered her room, although JF did not mention
any specific references to sexual assault. In Appellant's
Criminal Investigation Command (CID) interview, he admit-
ted—after amending his story several times—that MN was
indeed in his room, and that he was naked and rubbed lotion
on his groin before attempting to give her a hug. Appellant
was convicted of indecent conduct under Article 120 and
sexual assault under Article 134.

The panel also convicted Appellant of one count of indecent conduct for masturbating in the presence of his acquaintance and neighbor, EB. EB testified that she let Appellant into her apartment one morning when he claimed to be locked out of his own. He sat on her living room couch while she returned to her bedroom to get ready for work. Shortly thereafter, she heard moaning and slapping skin. EB briefly saw Appellant naked and masturbating on her couch and quickly exited her apartment. In Appellant's CID interview, he admitted that he was naked in EB's apartment but told investigators that he got undressed in his sleep and was covered by a blanket.

Finally, the panel convicted Appellant of sending or showing images of his penis to four different individuals without their consent. In the course of its investigation, CID recovered 118 images of Appellant's penis on his cell phone. Nine of these images were admitted as evidence at trial. CC, SG, and EW each testified that they received unwanted images of Appellant's penis via text message. A fourth individual, JF, testified that Appellant displayed an image of his penis on his phone while she rode in the passenger seat of his vehicle. Each witness either described the photos sent by Appellant or identified them as identical or similar to the images admitted into evidence.

## B. The Acquittals

The panel acquitted Appellant of ten specifications. Two of these acquittals were related to incidents involving MN and EB, namely allegations that he contacted MN for the purpose of impeding an investigation and that he *intentionally* exposed himself to EB in her apartment.

The remaining eight specifications of which Appellant was acquitted arose from two other alleged incidents. Four specifications of indecent conduct and one specification of unlawful touching were based on allegations related to a house party that Appellant attended with two of his accusers, KS, who was the owner of the home, and KP. At some point during the party, Appellant went outside to sit in his jeep. KS testified that she noticed this and walked out to engage Appellant in a conversation at his vehicle. She warned him against driving drunk and offered to let him stay the night. Appellant allegedly accepted her offer and, while still sitting in his jeep, asked KS to turn around so that he could change into pajamas. After he had supposedly changed, he signaled KS to turn back around, and when she did so she

saw him naked and masturbating. KS testified that she felt "shocked" by the incident, but afterward she let Appellant stay the night at her home and sleep on her couch with two other female guests, KP and LA.

KP confirmed that she slept on the couch with Appellant, despite hearing that Appellant had been observed masturbating in his jeep. KP testified that she awoke at one point during the night to find Appellant ejaculating on her foot. The Government presented no witnesses or corroborating evidence to support KS and KP's accusations. Nor did Appellant admit any inculpatory facts to support either incident.

The final three specifications of which Appellant was acquitted arose from an allegation that he exposed his penis to ST, the thirteen-year-old daughter of his roommate in Copperas Cove, Texas.[1] ST's father allegedly left her at his apartment with Appellant while, according to ST, her father visited his new girlfriend in a hotel room overnight. ST testified that she was doing homework on her computer while sitting on the couch next to Appellant as he watched TV in his pajamas. At some point, she looked over and saw Appellant's exposed penis through the unbuttoned hole of his pajama pants. ST also testified that she later awoke to Appellant covering her with a blanket while she slept on the couch, but that she could not remember clearly if he was naked when he did so. ST subsequently admitted that Appellant appeared to be asleep while he was watching TV and that his pants might have unbuttoned accidentally when he sat down, and she testified that the blanket incident might have been a dream. ST's father admitted that after learning of the pajamas incident from his daughter, he neither confronted Appellant or contacted law enforcement or military authorities, nor asked Appellant to vacate the apartment.

### C. Trial Counsel's Arguments

### 1. Preserved Errors

Appellant argues that the trial counsel, Lt. Col. Matthew McDonald, made improper arguments that prejudiced his right to a fair trial. At trial, defense counsel raised several objections to remarks related to Appellant's criminal disposi-

---

[1] Specification 3 of Charge IV did not directly involve ST, but it alleged that Appellant made threats of violence in response to his investigation that were overheard by ST's father, Sgt Robert T.

tion or propensity to commit the charged crimes. The MJ found error in only the following two statements:[2]

> What kind of man has 118 photos of this on his phone? You can use your own common sense, ways of the world. Is that normal? Maybe one or two men have, maybe three or four. 118? That's only one man and he's Sergeant Sewell. Is he the type of guy that has 118 pictures of this on his phone? Is that the type of guy that would do this to people? You all know the answer.

> What type of guy keeps sending pictures to somebody after they tell him no, to stop? Won't take no for an answer. If he won't take no for an answer when they tell him to stop sending pictures, he's not going to take no for an answer of PFC [MN] when she's telling him to get off, when she's trying to push him off. He won't take no for an answer from any female.

After finding error, the MJ promptly gave the following instructions to the panel:

> Members, two portions of LTC McDonald's argument to you were improper and I'm going to ask you to disregard them. One of them was at a point in his closing argument he stated what kind of man---words to the effect of what kind of man has 118 images of his penis on his cell phone, to the extent that that was an invitation for you basically to use that evidence that was introduced that he had 118 images of his penis on his cell phone as somehow character that's showing that he's some kind of deviant. I'm going to ask you to disregard it for that purpose. Likewise, LTC McDonald made some argument that the fact that the accused sent

---

[2] Defense counsel's unsuccessful objections included a challenge to trial counsel's assertion that the panel could use sexual assault evidence to rebut the defense of accident on Appellant's indecent exposure charges, trial counsel's statement that Appellant acted with the intent to gratify his sexual desires, and trial counsel's argument that Appellant's exposures reflected his testing the receptiveness of the alleged victims. The military judge did not abuse his discretion with respect to any of these rulings.

photographs of his penis, or is at least alleged to have, to women after they'd said I don't want to see that any more [sic] as standing for a general proposition that he doesn't take no for an answer, and therefore, that could be used for purposes of other offenses including the alleged assault on PFC [MN]. Once again that's an improper invitation for you to consider that act for a propensity purpose that I've not instructed you on.

## 2. Other Errors

Appellant failed to object to other statements that he challenges on appeal, including additional propensity arguments, improper vouching, references to facts not in evidence, and statements that purportedly inflamed the passions of the panel. For example, trial counsel referred to Appellant as an "old dirty man in the trench coat" and a "sexual predator." He also flatly referred to Appellant as guilty and declared that "we all know [Appellant] lied on the video." Trial counsel also vouched for the testimony of PFC MN—among others—by downplaying her initial reluctance to come forward and by telling the panel that "we all know she didn't make this up." In addition, trial counsel used personal pronouns like "I" and "we" pervasively throughout his argument.

## II. ACCA DECISION

The Army Court summarily affirmed Appellant's convictions, addressing only the one month of confinement relief awarded in light of Appellant's pretrial confinement. *Sewell*, 2016 CCA LEXIS 58, at *2–4, 2016 WL 381340 at *1.

## III. DISCUSSION

Improper argument is one facet of prosecutorial misconduct. *See United States v. Young*, 470 U.S. 1, 7–11 (1985). We review questions of improper argument and prosecutorial misconduct de novo. *See United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Hornback*, 73 M.J. 155, 159–60 (C.A.A.F. 2014) (internal quotation marks omitted) (alteration in original) (quoting *Fletcher*, 62 M.J. at 178 (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935))). Such conduct "can be gener-

ally defined as action or inaction by a prosecutor in violation of some legal norm or standard, e.g., a constitutional provision, a statue, a Manual rule, or an applicable professional ethics canon." *Id.* at 160 (citations omitted). In his arguments, trial counsel "may strike hard blows, [but] he is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88. In this regard, it is appropriate for trial counsel "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). He may not, however, inject his personal opinion into the panel's deliberations, inflame the members' passions or prejudices, or ask them to convict the accused on the basis of criminal predisposition. *See United States v. Burton*, 67 M.J. 150, 153 (C.A.A.F. 2009); *Fletcher*, 62 M.J. at 180; *Baer*, 53 M.J. at 238.

When preserved by objection, this Court reviews allegations of improper argument de novo to determine whether the military judge's ruling constitutes an abuse of discretion. *Hornback*, 73 M.J. at 159; Article 59(a), UCMJ. On the other hand, if there is no objection at trial, the appellant has the burden of establishing the prejudice. *See United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007). In either case, reversal is warranted only "when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone." *Hornback*, 73 M.J. at 160. (internal quotation marks omitted) (citation omitted).

In *Fletcher*, this Court set out three factors to guide our determination of the prejudicial effect of improper argument: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction[s]." 62 M.J. at 184. We have observed, albeit in the context of sentencing, that the third factor may so clearly favor the government that the appellant cannot demonstrate prejudice. *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013).

Appellant argues, citing *Fletcher*, that trial counsel's improper arguments rendered his trial unfair. He points to the pervasive scope of allegedly improper arguments and claims that the military judge's curative instructions were too narrow and infrequent to offset the prejudicial effect of the challenged statements. Moreover, he maintains that the Government's heavy reliance on testimonial evidence increased the likelihood that improper arguments unfairly swayed the

panel in an otherwise close case. We disagree. Even assuming that trial counsel's misconduct was severe and the military judge's instructions were insufficient, we find the third *Fletcher* factor dispositive.

We considered similar circumstances in *Hornback*. 73 M.J. at 161. In that case, despite clear errors by the trial counsel, the testimony of two witnesses who observed the appellant smoking an illicit substance was so strong that we were "confident that the members convicted [the appellant] on the basis of the evidence alone." *Id*. at 161. This was true even in the absence of a drug test and in the face of pervasive improper arguments about the appellant's character as a drug user. *Id*. We also noted that, despite trial counsel's improper attempts to establish propensity, the panel's acquittals of similar charges "indicate[d] that it took the military judge's instructions to disregard impermissible character evidence seriously." *Id*.

In Appellant's court-martial, the Government produced substantial evidence of his guilt for the offenses of which he was convicted. With respect to MN and EB, the Government proffered both each victim's testimony and Appellant's admissions to CID placing him at each scene in admittedly compromising circumstances (as in admitted he was naked and rubbing lotion on his groin in the offense involving MN, and admitted he was naked having "undressed in his sleep" in the offense involving EB). The Article 134 conviction involving MN also drew support from the testimony of JF who observed MN acting hysterical and upset immediately after the alleged incident. With respect to Appellant's four indecent exposure convictions the Government introduced both photographic evidence of photos of Appellant's penis retrieved from his phone and detailed testimony from four victims about the images Appellant sent or showed them. Moreover, the panel was properly instructed that it could consider the fact that 118 images were retrieved from Appellant's phone in assessing the likelihood that his transmissions were by accident or mistake.

In contrast, Appellant was acquitted of all specifications for which there was no corroborating evidence in the form of either inculpatory admissions by Appellant or photographs retrieved from his phone. The panel's mixed findings further reassure us that the members weighed the evidence at trial and independently assessed Appellant's guilt without regard to trial counsel's arguments. We presume, absent contrary

indications, that the panel followed the military judge's instructions that trial counsel's arguments were not evidence and that it must not engage in spillover when determining Appellant's guilt.

In light of the evidence and the outcome of Appellant's trial, we are "confident that the members convicted the appellant on the basis of the evidence alone." *Hornback*, 73 M.J. at 160 (internal quotation marks omitted) (citation omitted)

## IV. JUDGMENT

The decision of the United States Army Court of Criminal Appeals is affirmed.

Judge OHLSON, concurring in part and dissenting in part.

When a trial counsel's improper arguments, taken as a whole, are so damaging that this Court cannot be confident that the members convicted the accused on the basis of the evidence alone, the accused's conviction must be reversed. *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005). In making this determination, this Court considers three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *Id*.

Upon analyzing each of these three *Fletcher* factors, I conclude that in the instant case the improper arguments by the trial counsel were egregious, the putative curative instructions by the military judge were inadequate, and the evidence presented by the Government to support some of the charges on which Appellant was convicted was less than compelling. Therefore, I cannot be confident that the members convicted Appellant of all offenses on the basis of the evidence alone. Accordingly, I respectfully dissent from the majority's conclusion affirming the sentence and all of the findings of guilty.

1. The Severity of the Misconduct

As demonstrated below, during Appellant's court-martial the trial counsel made a variety of improper arguments that permeated his argument on findings.

(a) Trial counsel used the term "we" a multitude of times, often in the context of allying himself with the panel.[1] For example:

(i) "We all know [the victim] didn't make this up."

(ii) "[W]e all know [Appellant] lied on the video."

(iii) "[W]e know [Appellant's conduct] wasn't accidental."

---

[1] In his brief, Appellant notes that during argument on findings trial counsel used the term "I" or "we" more than seventy-five times.

(iv) "[W]e know this was not the actions of an innocent man."

This Court has held that "[i]t is improper for a trial counsel to interject [himself or] herself into the proceedings by expressing a 'personal belief or opinion as to the truth or falsity of any testimony or evidence.'" *Fletcher,* 62 M.J. at 179 (quoting *United States v. Horn*, 9 M.J. 429, 430 (C.M.A. 1980)). This "can include the use of personal pronouns in connection with assertions that a witness was correct or to be believed." *Id*. at 180. As the four examples listed above illustrate, trial counsel improperly used personal pronouns throughout findings argument.

(b) As the military judge correctly ruled, trial counsel committed error by making the following improper arguments:

(i) Referring to obscene photos that were the basis for a specification in this case, trial counsel argued to the panel: "What kind of man has 118 photos of [his penis] on his phone?... Is that the type of guy that would [sexually assault women]? You all know the answer."

(ii) "If he won't take no for an answer when they tell him to stop sending pictures, he's not going to take no for an answer … when [the victim is] telling him to get off, when she's trying to push him off. He won't take no for an answer from any female."

As this Court observed in *United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009), it is improper argument for a trial counsel to encourage a panel to make inferences not fairly derived from the evidence. In my view, trial counsel's propensity arguments were not fair inferences derived from the trial evidence.

(c) Trial counsel engaged in ad hominem attacks against Appellant. For example, trial counsel likened Appellant to an "old dirty man in a trench coat," called him a "sexual predator," and implied that he had psychological problems.

This Court has noted that "the prosecutor's obligation to desist from the use of pejorative language…is every bit as solemn as his [or her] obligation to attempt to bring the guilty to account." *Fletcher*, 62 M.J. at 182 (internal quota-

tion marks omitted) (citation omitted). Here, trial counsel used a series of pejorative terms to characterize Appellant.

(d) Trial counsel made inflammatory statements that were predicated on facts not in evidence. For example:

(i) "Six of these female [victims] were E-4 and below, and we all know how it works. Young females in the military are preyed upon."

(ii) After the military judge told trial counsel in an Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839 (2012), session that he couldn't introduce the results of Appellant's sanity board without first laying the proper foundation, trial counsel failed to lay such a foundation but still argued to the panel as follows: "Something's wrong with him. We can't say what it is, but he's got issues and his issues are dangerous and they're criminal." Thus, trial counsel seems to have been arguing to the panel that Appellant had some sort of criminal psychological disorder, but the trial counsel was not at liberty to disclose what it was.

(iii) Perhaps most troubling, trial counsel made an inflammatory comment regarding defense counsel. He said: "[T]he defense, they have a good poker face, but we all know there's not reasonable doubt." The panel members could reasonably infer from trial counsel's statement that defense counsel, despite their impassive expressions, knew that their client was guilty. Such an argument is extremely prejudicial to an accused and is patently unacceptable in a court-martial.

This Court has long recognized that "a court-martial must reach a decision based only on the facts in evidence." *Fletcher*, 62 M.J. at 183; *see also* American Bar Association, *ABA Standards for Criminal Justice Prosecution Function and Defense Function,* Prosecution Function Standard 3.5.9 (3d ed. 1993) ("The prosecutor should not intentionally refer to or argue on the basis of facts outside the record …."). Moreover, "counsel are prohibited from making arguments

calculated to inflame the passions or prejudices of the jury." *Fletcher*, 62 M.J. at 183.[2]

Although there is no basis to believe that trial counsel had any malicious intent in making these improper arguments, I conclude that, taken as a whole, they constituted serious error.[3]

### 2. The Measures Adopted to Cure the Misconduct

The military judge instructed the panel members to disregard only two of the improper arguments made by trial counsel: (a) the "What kind of man has 118 photos" argument (cited at 1(b)(i), *supra*) and (b) the "If he won't take no for an answer" argument (cited at 1(b)(ii), *supra*). The military judge did not instruct the panel regarding the many

---

[2] At trial, defense counsel did not object to all of trial counsel's improper arguments. In those instances, a plain error analysis applies. Appellant bears the burden of establishing the following three prongs: (1) there is error; (2) the error is plain or obvious; and (3) the error materially prejudices a substantial right. *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006). In my view, all of the improper arguments cited above rise to the level of plain error and thus there is no need to distinguish between those instances where defense counsel made an objection and those instances where defense counsel did not do so. Moreover, I note that at oral argument Government counsel admirably and appropriately conceded plain error in regard to those statements in which trial counsel vouched for the Government's witnesses.

[3] It is notable that the trial counsel in this case was quite senior—he was a lieutenant colonel (0-5)—and was designated as a special victims prosecutor. (Additionally, the record reflects that he previously served as a military judge.) Presumably, a person of that rank and in that position would have received significant training and courtroom experience before prosecuting a case such as this one. And yet, as demonstrated by the above listing of his improper arguments, trial counsel's performance was quite troubling. It is to be hoped that junior officers in the Judge Advocate General's Corps who may have viewed trial counsel as a role model will not emulate his trial advocacy techniques in future cases. Indeed, this Court's customary admonition bears repeating: "Prosecutorial misconduct occurs when trial counsel oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Hornback*, 73 M.J. 155, 159–60 (C.A.A.F. 2014) (citation omitted) (internal quotation marks omitted).

other improper arguments involving trial counsel's (a) personal opinions as to the truth of the evidence, (b) inflammatory comments, and (c) citation to facts not in evidence. Thus, in my view, the military judge's instructions did not provide the panel members with "a sufficient sense of judicial disapproval of both content and circumstance needed to dispel the harm in the core of [trial counsel's improper arguments]." *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990).

3. The Weight of the Evidence Supporting the Conviction

Trial counsel's improper arguments did not fatally taint Appellant's convictions pertaining to the photograph-associated specifications. However, the other specifications where the Government obtained a conviction are different. For example, the charges related to one complainant were not supported by any physical evidence or injury, at some points the complainant's testimony conflicted with the testimony of another witness, and defense witnesses testified that the complainant had a reputation for being untruthful. Further, Appellant's demeanor during his interrogation—which has been cited by the Government as bolstering the prosecution's case—may easily be explained by Appellant's initial desire to avoid admitting that he had permitted a female to come into his barracks room. Therefore, I conclude that the weight of the evidence supporting all of Appellant's conviction was not overly compelling.[4]

## CONCLUSION

Weighing the repeated and clearly erroneous improper arguments by trial counsel, the limited scope of the instructions provided by the military judge, and the less than compelling nature of the Government's evidence regarding some of the charges for which Appellant was convicted, I cannot be confident that the members convicted Appellant on the basis of the evidence alone. Therefore, I concur with respect to the indecent exposure findings of guilty, and I respectfully

---

[4] I view this case as being very different from our recent decision in *United States v. Pabelona*, __ M.J. __ (C.A.A.F. 2017). In that case, the evidence of the appellant's guilt was overwhelming.

dissent with respect to the remaining findings of guilty and the sentence. Accordingly, I would authorize a rehearing on the appropriate charges and the sentence.